**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| JOHN P. HASTINGS, et al., | : | |
| Plaintiffs, | : | Case No. 3:03CV131 |
| vs. | : | Magistrate Judge Sharon L. Ovington (by consent of the parties) |
| BRIAN HUBBARD, | : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT (DOC. # 72); ORDER TERMINATING CASE**

**I.      INTRODUCTION**

Plaintiff John P. Hastings brings this case through counsel under 42 U.S.C. §1983 claiming that Defendant Brian Hubbard, a Police Officer of the Clearcreek Township, Ohio Police Department, violated his rights under the United States Constitution.

This case is presently before the Court upon remand from the United States Court of Appeals.  Further proceedings remain necessary because the Court of Appeals affirmed the denial of qualified immunity to Defendant Hubbard.  As a result, three federal claims remain pending, each arising under the Fourth Amendment to the United States Constitution: (1) Officer Hubbard seized Mr. Hastings without reasonable suspicion; (2) Officer Hubbard arrested Mr. Hastings without probable cause; and (3) Officer Hubbard used excessive force to effect Mr. Hastings' seizure and arrest.

Despite denying Officer Hubbard the protection of qualified immunity, the Court of

Appeals' decision left open the possibility that collateral estoppel may prevent Mr. Hastings from re-litigating certain factual admissions supporting his no-contest plea in the Warren County, Ohio Court of Common Pleas.  Specifically, the Court of Appeals "express[ed] no opinion on how the plaintiff's no-contest plea might alter the qualified immunity analysis or impact a motion for summary judgment on remand."  (Doc. #64 at 11).  Taking this lead, Officer Hubbard has filed a presently pending Second Motion for Summary Judgment (Doc. #72) arguing, "Plaintiff is barred from contesting probable cause for the seizure by his criminal plea in an Ohio court and that the amount of force used to conduct the seizure was constitutionally reasonable."  Mr. Hastings disagrees, for reasons to be discussed.

**II.    STATE CRIMINAL PROCEEDINGS**

When denying Officer Hubbard's first Motion for Summary Judgment, the undersigned Judicial Officer reviewed the factual background surrounding Officer Hubbard's seizure and arrest of Mr. Hastings.  That factual review is incorporated herein by reference.  (Doc. #58, §III; *see also* Doc. #64).  The record has changed significantly from time of Officer Hubbard's first Motion for Summary Judgment, because it now contains evidence concerning the state criminal proceedings against Mr. Hastings.

The record contains the Entry, signed by the trial judge, documenting Mr. Hastings' no-contest plea to failure to comply with order of a police officer.  (Doc. #72, Exhibit A-2).  Mr. Hastings was represented by counsel during the plea hearing.  (Doc. #72, Exh. A-3).

A review of the plea-hearing transcript reveals that prior to the plea proceedings, a grand jury in state court had indicted Mr. Hastings on one count of Felonious Assault and on another

count not described during the plea hearing. (Doc. #72, Exh. A-3 at 3, 10, 16). The prosecuting attorney informed the trial judge that the parties had reached a plea agreement wherein the Felonious Assault charge in the indictment would be amended to the charge of failure to comply with order of a police officer, a first degree misdemeanor. (Doc. #72, Exh. A-2; *see* Exh. A-3 at 3).

Under Ohio law, failure to comply with order of a police officer is prohibited as follows:

> No person shall fail to comply with any lawful order or direction of any police officer with authority to direct, control, or regulate traffic.

Ohio Rev. Code §2921.331(A). The trial judge explained to Mr. Hastings that this offense, as charged in the amended indictment, was a first degree misdemeanor, *see* Ohio Rev. Code §2921.331(C)(2), subjecting him to a possible sentence of up to six months incarceration and a fine up to $1,000.00. (Doc. #72, Exh. A-3 at 6). Mr. Hastings, through his attorney, waived any defect of service or defect in the amended indictment. (Doc. #72, Exh. A-3 at 5-6).

The trial judge explained to Mr. Hastings the import of his no-contest plea as follows:

> The plea of no contest means that you are not contesting the allegations of the amendment. And in all but a very small number of cases the allegations of a complaint are sufficient to state the offense and, if they do state the offense, then there is going to be a finding of guilty, so it at that particular point amounts to a plea of guilty....

(Doc. #72, Exh. A-3 at 7). Under Ohio law, "a no contest plea is an admission of the truth of the facts underling the criminal charge." *Walker v. R. Schaeffer*, 854 F.2d 138, 153 (6th Cir. 1988) (citing and explaining parenthetically *State v. Pernell*, 47 Ohio St.2d 261 (1976)).

Also during the plea hearing, the prosecuting attorney described the charge and factual allegations in the amended indictment as follows:

3

> [O]n or about October 11, 1998, in Warren County, Ohio, the Defendant now before the court, John Hastings, Sr., did fail comply with a lawful order or direction of a police officer vested with authority to direct, control or regulate traffic, this in violation of the statute called failure to comply with order or signal of police officer, Section 2921.33.1(A) of the Ohio Revised Code, a misdemeanor of the first degree.
>
> Very briefly, with regard to the facts, this did occur during the afternoon of October 11, 1998, about 4:50 in the afternoon or so. The Defendant was on a motorcycle that was involved in an accident at the corner of State Route 73 and 48 in Clearcreek Township, Warren County, Ohio. He received injuries from that.
>
> He moved himself and his motorcycle onto the parking lot at the Clearcreek Auto Sales, which is on a corner at that intersection. The officer came after that, Officer Brian Hubbard of the Clearcreek Township police department, who was vested to control and regulate traffic. He was in a cruiser and a marked uniform on that date. He asked Mr. Hastings to come towards him from across the parking lot so he could investigate the accident. Mr. Hastings did move his motorcycle towards the officer at a slow rate of speed, but failed to stop in front of the officer and was driving past the officer and bumped into the officer with his motorcycle. The officer did receive some injuries, although not serious physical harm as defined in the Ohio Revised Code.

(Doc. #72, Exh. A-3 at 14-15).

When asked by the trial judge for comment about the facts, Mr. Hastings' attorney stated, "I think there was a dispute as to the bumping into, but as to him going past the officer there's no dispute." (Doc. #72, Exh. A-3 at 15).

After the facts of the amended indictment were read, Mr. Hastings entered, and the trial judge accepted, the plea of no contest to the amended charge of failure to comply with the order of a police officer. (Doc. #72, Exh. A-3 at 16).

4

**III.     ANALYSIS**

The summary judgment standards discussed previously in this case, *see* Doc. #58 at §§II, apply equally to resolving Officer Hubbard's Second Motion for Summary Judgment, and are therefore incorporated herein.

**A.     Collateral Estoppel**

Officer Hubbard contends, "An individual that has been found guilty of failure to follow the direction of a police officer is collaterally estopped from re-litigating the elements of that crime in a subsequent civil proceeding." (Doc. #72 at 7). Officer Hubbard reasons, "In this case, Hastings pleaded no-contest and was found guilty of failure to comply with the signal of a police officer.... This plea was an admission of the facts that underlie that offense and no reasonable jury could conclude that Hastings did not see Officer Hubbard or ignore his command to stop." (Doc. #72 at 9)(internal citation omitted).

Mr. Hastings contends that there is an absence of most, if not all, of the elements of collateral estoppel, and that the may therefore litigate anew the facts underlying his no-contest plea and conviction.

"As a general rule, a federal civil action brought under §1983 is not a venue for re-litigating issues that were decided in a prior state criminal case." *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005). "A state court judgment must be given the same preclusive effect in federal court that it would be given in the courts of the rendering state." *Walker v. R. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988) (citing *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 85 (1984))(other citations omitted). Because Mr. Hastings' pled no contest to a criminal charge in the Ohio courts, Ohio issue preclusion law applies to determine whether

5

he may re-litigate in this case issues that were previously decided in the Ohio courts. *McKinley*, 404 F.3d at 428.

The Ohio Supreme Court describes the applicable preclusion doctrine as follows:

[T]he doctrine of collateral estoppel, or more correctly issue preclusion, precludes further action on an identical issue that has been actually litigated and determined by a valid and final judgment as part of a prior action among the same parties or those in privity with those parties.

*State of Ohio v. Williams*, 76 Ohio St.3d 290, 294 (1996); *see McKinley*, 404 F.3d at 428-29 (and Ohio case cited therein). Preclusive effect does not adhere to judgments by an Ohio court when the litigant against whom the preclusive effect is sought did not have a full and fair opportunity to litigate the claims or issues decided by the state courts. *See Allen v. McCurry*, 449 U.S. 90, 104 (1980); *see also Walker* 854 F.2d at 142. Indeed, "[t]he main legal thread which runs throughout the determination of the applicability of *res judicata,* inclusive of the adjunct principle of collateral estoppel, is the necessity of a fair opportunity to fully litigate and to be 'heard' in the due process sense. Accordingly, an absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action." *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1268 (6th Cir. 1986).

Mr. Hastings contends, "it cannot be said that the identical issue (reasonable suspicion or probable cause to seize Mr. Hastings) was actually litigated in the prior proceeding. It must be remembered that there was no Motion to Suppress or other claim of illegal seizure made in ths state court. Instead, Mr. Hastings merely entered a no contest plea which, at most, constituted an admission that [Officer] Hubbard told him to stop and he didn't...." (Doc. #75 at 3).

Contrary to Mr. Hastings' contentions, the pertinent factual issues underlying his no-contest plea and his resulting conviction were actually litigated during Mr. Hastings state criminal proceedings. The Court accepts as true that no Motion to Suppress was filed in the state trial court, and that as a result, no decision was made in the state courts concerning whether reasonable suspicion supported Mr. Hastings' seizure or whether probable cause supported his arrest. This does not end the collateral estoppel inquiry because Mr. Hastings' no-contest plea and resulting conviction conclusively resolved the factual issues necessary under Ohio law to support the plea and conviction. Indeed, during the plea hearing, the trial court provided Mr. Hastings with a full and fair opportunity to litigate any challenge to the charge and facts set forth in the amended indictment. The transcript of the plea hearing also reveals that Mr. Hastings' attorney stated a single factual objection "as to the bumping into..." Officer Hubbard. (Doc. #72, Exh. A-3 at 15). Mr. Hastings raised no other objection to the charge or the facts of the amended indictment. *See id.* In this manner, when given a chance to do so by the trial judge, Mr. Hastings, through his attorney, actually litigated any challenge he had to the charge as well as any factual issues he had with the amended indictment. Because of this, although Mr. Hastings' no-contest plea and resulting conviction did not actually litigate his Fourth Amendment claims, Mr. Hastings did actually litigate the factual issues underlying his plea and resulting conviction, and collateral estoppel bars him from re-litigating these pure factual issues in the present case.

Mr. Hastings also contends that collateral estoppel does not apply because Officer Hubbard was not a party to the underlying proceedings; instead the parties were the State of Ohio and John Hastings, Sr. Mr. Hastings explains that he seeks only to hold Officer Hubbard liable in his individual capacity, not his official capacity, and that he does not seek to hold any

7

governmental entity liable. These contentions do not support Mr. Hastings' attempt to avoid the preclusive effect of his no-contest plea and his conviction. The requirement of identical parties exists to prevent a person who was not a party to a prior proceeding from suffering prejudice because of his or her absence in the prior proceeding. In contrast, when the party against whom collateral estoppel applies – here, Mr. Hastings – was given a full and fair opportunity to litigate certain factual issues in the prior case, then no prejudice or due process concern arises from applying collateral estoppel to those factual issues resolved by the prior case. An example of this occurred in *Walker* where the defendants police officers, who had arrested the plaintiffs, were not parties to the underlying state criminal case. *Walker*, 854 F.2d at 140-42. Collateral estoppel applied in *Walker* despite the lack of identical parties in the prior criminal case, because the plaintiffs had been provided a full and fair opportunity to litigate their claims in the prior court. *Id*. at 142. As in *Walker*, Mr. Hastings admitted in open court the facts underlying his no-contest plea and his resulting conviction, with the single exception of whether he bumped into Officer Hubbard. Collateral estoppel thus bars him from challenging the facts underlying his no-contest plea and his resulting conviction.

Accordingly, collateral estoppel bars Mr. Hastings from re-litigating in the present case the facts, reviewed above, *supra*, p.4, underlying his no-contest plea and underlying his conviction. The significance of these additional facts on each of Mr. Hastings' Fourth Amendment claims must still be determined.

  **B.**   **Mr. Hastings' Fourth Amendment Claims**

The Fourth Amendment standards reviewed previously in this case, *see* Doc. #58 at §§V(B), (C), apply equally to resolving Officer Hubbard's Second Motion for Summary

Judgment, and are therefore incorporated herein.

Based on the present record and the bar presented by collateral estoppel, the state proceedings against Mr. Hastings conclusively established that Officer Hubbard "asked Mr. Hastings to come towards him from across the parking lot so he could investigate the accident. Mr. Hastings did move his motorcycle towards the officer and was driving past the officer...." (Doc. #72, Exh. A-3 at 14). Mr. Hastings effectively admitted these facts in open court. In addition, by pleading no contest to the charge of failure to comply with an order of police officer, Mr. Hastings effectively admitted that Officer Hubbard was vested with the authority to direct, control, or regulate traffic; that Officer Hubbard gave Mr. Hastings a lawful order; and that Mr. Hastings failed to obey this lawful order. *See* Doc. #72, A-3 at 14-15; *see also* Ohio Rev. Code §2921.331(A). Under these circumstances, an objective police officer in Officer Hubbard's position had both reasonable suspicion to briefly detain Mr. Hastings and probable cause to arrest him for violating Ohio Rev. Code §2921.33(A). Because Officer Hubbard's subjective motivation plays no role in the applicable Fourth Amendment seizure and arrest analysis, it is insignificant that Mr. Hastings was charged with, and later indicted for, felonious assault rather than failure to comply with an order of a police officer. *See Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004)("The rule that the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the officer at the time of the arrest is inconsistent with this [the Supreme Court's Fourth Amendment] precedent.").

As to the amount of force used by Officer Hubbard, it is necessary to review the Court's prior conclusion that under the then-existing record, construing it in Mr. Hastings' favor, the

9

amount of force used by Officer Hubbard – grabbing the handlebars of Mr. Hastings' motorcycle while he drove slowly past – was not objectively reasonable. (Doc. #58 at 26-27). This conclusion was based on the totality of the circumstances existing when Officer Hubbard grabbed the motorcycle handlebars, and particularly on the conclusion – based on the record at the time – that Officer Hubbard lacked "reasonable suspicion that Mr. Hastings had violated (or was violating) the law...." (Doc. #58 at 27). Now, however, the record contains the additional evidence concerning Mr. Hastings' no-contest plea. Given this additional evidence, and the application of collateral estoppel, the prior conclusion that Officer Hubbard lacked reasonable suspicion is no longer valid.

Officer Hubbard contends that because he had reasonable suspicion to detain Mr. Hastings, the amount of force he used to detain Mr. Hastings, grabbing the handlebars of the motorcycle moving at five miles per hour, was not a constitutionally unreasonable amount of force. The unintended consequences from the minimal force Officer Hubbard used does not transform this into unreasonable use of force, according to Officer Hubbard.

Mr. Hastings contends, "All that will have changed from this Court's previous analysis will be the 'fact' that [Officer] Hubbard had some possible legal, <u>albeit</u> <u>unstated</u> reason to stop Mr. Hastings. Whether that reason warranted the force used to effect the seizure remains, in Plaintiff's opinion, an issue for the jury." (Doc. #75 at 4).

Due to the parties' contentions, the Fourth Amendment standards applicable to Officer Hubbard's use of force previously described, *see* Doc. #58, §V(C)(1), bear repeating. "When making an ... investigatory stop, the government has 'the right to use some degree of physical coercion or threat thereof to effect it.'" *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir.

2001)(quoting in part *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "*[A]*ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness standard.'" *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 1994) (quoting in part *Graham*, 490 U.S. at 395).

> In determining whether an officer's actions were reasonable, the specific facts of each case are key.... Courts should pay particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' While courts must look to the totality of the circumstances in determining whether a seizure was reasonable, they must be sure to view those facts 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'

*Kostrzewa*, 247 F.3d at 639 (quoting in part *Graham*, 490 U.S. at 396); *see Champion*, 380 F.3d at 901. The test is, in light of the above considerations and without regard to the subjective motivations of the police officer, did the officer use an objectively reasonable amount of force in the particular situation he or she faced. *See Champion*, 380 F.3d at 901; *see also Kostrzewa*, 247 F.3d at 639; *Adams v. Metiva*, 31 F.3d 375, 385 (6th Cir. 1994).

Considering the totality of the circumstances, given the additional evidence in the record regarding Mr. Hastings' no-contest plea, a reasonable officer at the scene would have observed that Mr. Hastings failed to comply with a lawful order of a police officer by not stopping as he drove slowly past on a motorcycle. As discussed above, reasonable suspicion existed to support a brief detention of Mr. Hastings, and this in turn, provided Officer Hubbard with the authority to use the some physical force to stop Mr. Hastings. *See Kostrzewa*, 247 F.3d at 639. Thus, the significance of the additional evidence of Mr. Hastings' no-contest plea and resulting conviction is greater for Fourth Amendment purposes than Mr. Hastings perceives, for the reasonable

suspicion to stop also justified a use of force, leaving only a question as to whether the amount of force used was reasonable.

The record contains no genuine dispute over the fact that Officer Hubbard grabbed and pulled the handlebars of a slowly moving motorcycle in a parking lot where no other vehicle traffic posed a danger to Mr. Hastings or Officer Hubbard.  Mr. Hastings testified in his deposition that his motorcycle was moving at five miles per hour when Officer Hubbard grabbed the handlebar next to Mr. Hastings' left hand and pulled to the left.  (Doc. #40 at 38-39).  The motorcycle's throttle was in Mr. Hastings' right hand.  *Id*. at 38.  Mr. Hastings explains what happened next as follows:

> Since my body will continue in a straight line he forced the motorcycle to turn left I was thrown head first down into the throttle and holding on to that throttle twisting it towards me as I fell into the throttle pulled it wide open in first gear.

*Id*.  This caused a "tank slapper," a "tremendous wobble of the front end" of the motorcycle as it tried to right itself.  *Id*. at 40.  At this point, Officer Hubbard no longer held the handlebars as he had fallen backward into his police car.  *Id*.  Mr. Hastings was ejected from the motorcycle.  *Id*. at 41.

In light of Mr. Hastings' testimony, Officer Hubbard's act of grabbing and pulling the motorcycle handlebars with his left hand constituted a minimal amount of force under the circumstances because of the slow speed of the motorcycle, which was moving only five miles per hour; because Officer Hubbard did not grab the motorcycle's accelerator, which was controlled by Mr. Hastings' right hand; and because the events occurred in a parking lot where no other vehicle traffic posed a danger to Mr. Hastings or to Officer Hubbard.  Although this minimal amount of force led to the tank slapper and eventual ejection of Mr. Hastings from the

motorcycle, these unexpected consequences do not transform a use of minimal force into an unreasonable use of force. *See, e.g., Rasmussen v. Larson,* 863 F.2d 603 (8th Cir.1988) (minimal force used to arrest elderly person who died from heart attack); *cf. Dunigan v. Noble*, 390 F.3d 486, 493-94 (6th Cir. 2004)(officer's push of arrestee as he moved past her on close stairwell of her home did not amount to excessive force). "Not every push or shove...," or in this case grab or pull, "even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005)(citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Untalan v. City of Lorain*, 430 F.3d 312, 315 (6th Cir. 2005). Allowing for the split-second decision Officer Hubbard had to make when Mr. Hastings drove slowly past, and under all the circumstances facing Officer Hubbard, his decision to grab and pull the motorcycle handlebar constituted a reasonable use of a minimal amount of force to attempt to stop Mr. Hastings.

This conclusion is reached even though Mr. Hastings' no-contest plea and resulting conviction did not conclusively resolve whether he bumped into Officer Hubbard, because this fact was not essential to establishing the offense of failure to comply with an order of a police officer under Ohio Rev. Code §2921.33(A). In addition, during the plea hearing, Mr. Hastings' attorney disputed the alleged fact that Mr. Hastings bumped into Officer Hubbard, leaving the record void of an admission by Mr. Hastings that he bumped into Officer Hubbard. However, assuming Mr. Hastings did not bump into Officer Hubbard, the existence of reasonable suspicion

13

to support the investigatory stop effected by Officer Hubbard justified the use of some physical force to stop Mr. Hastings. *See Kostrzewa*, 247 F.3d at 639. There is no genuine dispute that the amount of force used was minimal, and under the totality of the circumstances this amount of force was reasonable.

Accordingly, Officer Hubbard is entitled to summary judgment on Mr. Hastings' Fourth Amendment claims.

    **C.    Qualified Immunity**

The standards applicable to the qualified-immunity analysis discussed previously in this case, *see* Doc. #58 at §V(A), apply equally to resolving Officer Hubbard's Second Motion for Summary Judgment, and are therefore incorporated herein.

Officer Hubbard contends that he is entitled to qualified immunity even if there remains a genuine issue of fact as to whether there has been a constitutional violation. Qualified immunity applies, according to Officer Hubbard, because no reasonable police officer in his position at the time (October 1998) would have know that the simple act of grabbing the handlebar of a slowly moving motorcycle was an excessive and unconstitutional use of force.

The conclusions reached above – that Officer Hubbard did not violate Mr. Hastings' rights under the Fourth Amendment – require the conclusion that qualified immunity shields Officer Hubbard from these constitutional claims. *See, e.g., Jackson v. Schultz*, 429 F.3d 586, 591-92 (6th Cir. 2005); *cf. Armstrong v. City of Melvindale*, 432 F.3d 695, 699 (6th Cir. 2006) ("Whether a constitutional violation occurred is a threshold issue: if the officers' conduct violated no constitutionally protected right, there is no need for further analysis.").

Even if Mr. Hastings established that Officer Hubbard used excessive force in violation

of Mr. Hastings' Fourth Amendment rights, qualified immunity shields Officer Hubbard. This is so because Mr. Hastings has not pointed to any clearly established case law that would have alerted a reasonable police officer in Officer Hubbard's position in October 1998 that grabbing and pulling the handlebars of motorcycle, in circumstances similar to those facing Officer Hubbard, constituted an excessive use of force in violation of the Fourth Amendment. *See* Doc. #75. Mr. Hastings has therefore failed to meet his burden of showing that qualified immunity does not shield Officer Hubbard from this Fourth Amendment claim. *See Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002)(Once a defendant official asserts qualified immunity, the ultimate burden to show that it does not apply rests on the plaintiff). In addition, a review of the pre-October 1998 cases relied on by Officer Hubbard, *see* Doc. #12-15, reveals that at most reasonable officers could disagree regarding whether the amount of force used by Officer Hubbard was constitutionally excessive under the circumstances. Consequently, qualified immunity applies since it protects "all but the plainly incompetent or those who knowingly violate the law." *Armstrong v. City of Melvindale*, 432 F.3d 695, 699 (6th Cir. 2006) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

Accordingly, qualified immunity shields Officer Hubbard from Mr. Hastings' Fourth Amendment claims.

    **D.**    *<u>Heck v. Humphey</u>*

Officer Hubbard contends that collateral estoppel bars Mr. Hastings' Fourth Amendment claims under an unpublished case, *Martin v. Girard*, 2000 WL 658326 (6th Cir., May 12, 2006).

In *Girard*, the plaintiffs brought a federal §1983 case challenging their arrests under the Fourth Amendment after they had pled guilty in Michigan state court to charges of failure to

15

obey a lawful order of a traffic control officer. The Court of Appeals held that, under *Heck v. Humphrey*, 512 U.S. 477 (1994), the plaintiffs' Fourth Amendment challenges to their arrests were not cognizable under §1983 because a finding of a Fourth Amendment violation would necessarily implicate the validity of the underling criminal convictions. 2000 WL 658326 at *2 (citing *Heck*, 512 U.S. at 486-87) (other citation omitted). The same result adheres in the present case.

When examining §1983 claims, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). The focus here is on the remedy resulting from a success on the merits of the constitutional claims, rather than on the particular remedy the plaintiff seeks. *See id*. Consequently, even if a prisoner only seeks monetary damages for claimed federal constitutional violations, his or her Complaint is not cognizable under §1983 when success on the merits "necessarily impl[icates] the invalidity of the punishment imposed." *Wood v. Balisok*, 520 U.S. 641, 648 (1997); *see Heck*, 512 U.S. at 487.

In the instant case, the success of Mr. Hastings' Fourth Amendment challenges to his seizure and arrest would necessarily implicate the validity of his conviction. Consequently, his Fourth Amendment challenges to his seizure and arrest are not cognizable in the instant case. *See Wood*, 520 U.S. at 648; *see also Heck*, 512 U.S. at 487; *Girard*, 2000 WL 658326 at *2.

The proper result when claims are not cognizable under §1983 is not a stay pending the plaintiff's attempt to exhaust the claims in state court. "Section 1983 contains no judicially imposed exhaustion requirement, *Heck*, 512 U.S. at 481, 483; absent some other bar to the suit, a claim is either cognizable under §1983 and should immediately go forward, or it is not and

16

should be dismissed." *Wood*, 520 U.S. at 649.

Accordingly, Mr. Hastings' claims that his reasonable suspicion did not support his seizure and that probable cause did not support his arrest are not cognizable in the present case.

**IT IS THEREFORE ORDERED THAT:**

1. Defendant Brian Hubbard's Second Motion For Summary Judgment (Doc. #72) is GRANTED; and

2. The case is terminated on the docket of this Court.

June 16, 2006

                 s/ Sharon L. Ovington
                 Sharon L. Ovington
                 United States Magistrate Judge